IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JAMES REED
PO BOX 167
FACTORYVILLE, PA 18419

V.

3:16-CV-2143.

LACKAWANNA COUNTY
200 N. ADAMS AVENUE
SCRANTON, PA 18503

COMMISSIONER PATRICK O'MALLEY
200 N. ADAMS AVENUE
SCRANTON, PA 18503

FILED
SCRANTON

OCT 2 4 2016

COMMISSIONER JIM WANSACZ
200 N. ADAMS AVENUE
SCRANTON, PA 18503

Per_____
DEPUTY CLERK

COMMISSIONER COREY O'BRIEN
200 N. ADAMS AVENUE
SCRANTON, PA 18503

WARDEN ROBERT MCMILLAN
LACKAWANNA COUNTY PRISON
1371 N. WASHINGTON AVENUE
SCRANTON, PA 18509

DEPUTY WARDEN BRIAN LANGAN
LACKAWANNA COUNTY
1371 N. WASHINGTON AVENUE
SCRANTON, PA 18509

CORRECTIONS OFFICE ROBERT CORNALL
LACKAWANNA COUNTY
1371 N. WASHINGTON AVENUE
SCRANTON, PA 18509

CORRECTIONAL CARE, INC.
a/k/a CORRECTIONAL CARE, P.C.
4101 BIRNEY AVENUE
MOOSIC, PA 18507

EDWARD ZALOGA, D.O.

1

| | |
|---|---|
| 4101 BIRNEY AVENUE<br>MOOSIC, PA 18507 | :<br>:<br>: |
| KEN MCCOWLEY<br>4101 BIRNEY AVENUE<br>MOOSIC, PA 18507 | :<br>:<br>:<br>: |
| ANTHONY IANNUZZI<br>4101 BIRNEY AVENUE<br>MOOSIC, PA 18507 | :<br>:<br>:<br>: |
| ALEXIS MORSKAT<br>4101 BIRNEY AVENUE<br>MOOSIC, PA 18507 | :<br>:<br>:<br>: |
| EUGENE TOCKETT<br>4101 BIRNEY AVENUE<br>MOOSIC, PA 18507 | :<br>:<br>:<br>: |
| NURSE RUTH<br>4101 BIRNEY AVENUE<br>MOOSIC, PA 18507 | :<br>:<br>:<br>: |
| JOHN/JANE DOE MEDICAL STAFF I-X<br>LACKAWANNA COUNTY PRISON<br>1371 N. WASHINGTON AVENUE<br>SCRANTON, PA 18509 | :<br>:<br>:<br>:<br>: |
| JOHN/JANE DOE PRISON STAFF I-X<br>LACKAWANNA COUNTY<br>1371 N. WASHINGTON AVENUE<br>SCRANTON, PA 18509 | :<br>:<br>:<br>: |

## COMPLAINT

AND NOW, comes Plaintiff, James Reed, by and through his Attorney, Matthew T. Comerford, Esq., who files this Complaint, averring as follows:

### Jurisdiction

1. This is a civil action seeking damages against Defendants for acts constituting the deprivation of Plaintiff's rights secured under the 14th Amendment to the United States Constitution, under Federal Law 42 U.S.C. § 1983, providing for cause of action, and under Pennsylvania State Law.

2

2. While Plaintiff was subjected to pre-trial detention in the Lackawanna County Prison, Defendants, acting individually and/or in concert, willfully, callously, recklessly, with gross negligence, and with deliberate indifference, acted and/or failed to act, under the Color of State Law, in a manner which proximately caused the violation of Plaintiff's right to Due Process, which, at all times hereinafter in this Complaint includes the right to bodily integrity, right to safe and secure prison housing, right to medical treatment, and the right to be free from cruel and unusual punishment, protected under 42 U.S.C. § 1983, and the 14th Amendment to the United States Constitution.

3. Original Federal Jurisdiction and Supplemental Jurisdiction over State Law claims are established under 28 U.S.C. §§ 1331, 1343, and 1367, under 42 U.S.C. § 1983.

4. Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1391 because the factual basis for all claims stated herein occurred in the Middle District and because Plaintiff and Defendants reside in and/or maintain their principle places of business in the Middle District.

**Parties**

5. Plaintiff incorporates by reference paragraphs 1-4 of this Complaint as if fully set forth herein.

6. Plaintiff, James Reed, is an adult, competent individual who currently resides in Factoryville, Pennsylvania.

7. Defendant, Lackawanna County ("Defendant County"), is a municipality organized by and through the Commonwealth of Pennsylvania that regulates and implements customs, policies, and practices, and that directs, manages, and controls the customs, policies, practices, and employees of Lackawanna County Prison ("the Prison") and Correctional Care, Inc.. At all relevant times, Defendant County was acting under the Color of State Law.

8. Individual Defendant, Commissioner Patrick O'Malley ("Defendant O'Malley"), is and/or was a Lackawanna County Commissioner, who is and/or was employed by Defendant County, is and/or was under the command and authority of Defendant County, and who regulated and implemented customs, policies and practices of Defendant County, the Prison and Correctional Care, Inc., at all relevant times herein. At all relevant times, Defendant O'Malley acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant O'Malley is being sued in his individual, supervisory, and all other official capacities as a Commissioner.

9. Individual Defendant, Commissioner Jim Wansacz ("Defendant Wansacz"), is and/or was a Lackawanna County Commissioner, who is and/or was employed by Defendant County, is and/or was under the command and authority of Defendant County, and

who regulated and implemented customs, polices and practices of Defendant County, the Prison and Correctional Care, Inc., at all relevant times herein. At all relevant times, Defendant Wansacz acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant Wansacz is being sued in his individual, supervisory, and all other official capacities as a Commissioner.

10. Individual Defendant, Commissioner Corey O'Brien ("Defendant O'Brien"), is and/or was a Lackawanna County Commissioner, who is and/or was employed by Defendant County, is and/or was under the command and authority of Defendant County, and who regulated and implemented customs, policies and practices of Defendant County, the Prison and Correctional Care, Inc., at all relevant times herein. At all relevant times, Defendant O'Brien acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant O'Brien is being sued in his individual, supervisory, and all other official capacities as a Commissioner.

11. Individual Defendant, Warden Robert McMillan ("Defendant McMillan"), is and/or was a Corrections Officer and the Warden of the Prison. At all times relevant herein, Defendant McMillan was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant McMillan is being sued in his individual, supervisory, and all other official capacities as Warden and Corrections Officer.

12. Individual Defendant, Deputy Warden Brian Langan ("Defendant Langan"), is and/or was a Corrections Officer and the Warden of the Prison. At all times relevant herein, Defendant Langan was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Langan is being sued in his individual, supervisory, and all other official capacities as Warden and Corrections Officer.

13. Individual Defendant, Corrections Officer Robert Cornall ("Defendant Cornall"), is and/or was a Corrections Officer at the Prison. At all times relevant herein, Defendant Cornall was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Cornall is being sued in his individual, supervisory, and all other official capacities as Corrections Officer.

14. Defendant, Correctional Care, Inc. ("Defendant Contractor"), is a Business Corporation registered under the laws of the Commonwealth of Pennsylvania. At all times relevant herein, Defendant Contractor was under contract with Defendant County to provide medical services to inmates at the Prison. At all times relevant herein, Defendant Contractor was acting under the Command and Authority of Defendant County and was acting under the Color of State Law and pursuant to the

custom, policy, contract, and/or practice of Defendant County. Defendant Contractor is being sued in its independent capacity as a Pennsylvania Corporation, its supervisory capacity as an employer, and as a government actor, acting under Color of State Law.

15. Individual Defendant Edward Zaloga, D.O., ("Defendant Zaloga"), is a doctor of osteopathy, registered under the laws of the Commonwealth of Pennsylvania. Defendant Zaloga owns, operates, controls, maintains, and is President of Defendant Contractor. At all times relevant herein, Defendant Zaloga was acting under the Command and Authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, contract, and/or practice of Defendant County and Defendant Contractor. Defendant Zaloga is being sued in his individual capacity, his supervisory capacity as an employer, and as a government actor, acting under Color of State Law.

16. Individual Defendant, Ken McCowley ("Defendant Cornall"), is and/or was a Physicians Assistant working at the Prison, and employed by Defendant Contractor. At all times relevant herein, Defendant Cornall was employed by and under the command and authority of Defendant Contractor and/or Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County and Defendant Contractor. Defendant Cornall is being sued in his individual, supervisory, and all other official capacities as Physicians Assistant.

17. Individual Defendant, Anthony Iannuzzi ("Defendant Iannuzzi"), is and/or was a Nurse working at the Prison, and employed by Defendant Contractor. At all times relevant herein, Defendant Ianuzzi was employed by and under the command and authority of Defendant Contractor and/or Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County and Defendant Contractor. Defendant Iannuzzi is being sued in his individual, supervisory, and all other official capacities as Nurse.

18. Individual Defendant, Alexis Morskat ("Defendant Morskat"), is and/or was a Nurse working at the Prison, and employed by Defendant Contractor. At all times relevant herein, Defendant Morskat was employed by and under the command and authority of Defendant Contractor and/or Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County and Defendant Contractor. Defendant Morskat is being sued in his individual, supervisory, and all other official capacities as Nurse.

19. Individual Defendant, Eugene Tockett ("Defendant Tockett"), is and/or was a Nurse working at the Prison, and employed by Defendant Contractor. At all times relevant herein, Defendant Tockett was employed by and under the command and authority of Defendant Contractor and/or Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County and Defendant Contractor. Defendant Tockett is being sued in his individual, supervisory, and all other official capacities as Nurse.

20. Individual Defendant, Nurse Ruth, last name unknown, ("Defendant Ruth"), is and/or was a Nurse working at the Prison, and employed by Defendant Contractor. At all times relevant herein, Defendant Ruth was employed by and under the command and authority of Defendant Contractor and/or Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County and Defendant Contractor. Defendant Ruth is being sued in his individual, supervisory, and all other official capacities as Nurse.

21. Individual Defendants, John/Jane Doe I-X Medical Staff ("John Doe Medical Defendants"), are and/or were Nurses, medical staff, and/or held other administrative positions, at Defendant Contractor and/or the Prison, employed by Defendant Contractor and/or County, and under the command and authority of Defendant County and Defendant Contractor. At all times relevant herein, John Doe Medical Defendants acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Defendant Contractor. John Doe Defendants are being sued in their individual, supervisory, and all other official capacities as employees of Defendant Contractor.

22. Individual Defendants, John/Jane Doe Prison Staff I-X ("John Doe Correctional Defendants"), are and/or were Corrections Officers or held other administrative positions at the Prison, employed by Defendant County, and under the command and authority of Defendant County. At all times relevant herein, John Doe Correctional Defendants acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or the Prison. John Doe Correctional Defendants are being sued in their individual, supervisory, and all other official capacities as Prison employees.

## Background Facts

23. Plaintiff incorporates be reference paragraphs 1-22 of this Complaint as if set forth fully herein.

24. On or about December 15, 2009, Defendant County entered into a Comprehensive Health Services Agreement ("the Agreement") with Defendant Contractor for the provision of all medical treatment and services to inmates, detainees, and prisoners at the Prison.

25. In entering into this Agreement, Defendant Contractor voluntarily undertook to engage in a traditional government function in lieu of the government itself performing that function.

26. Under this Agreement, Defendant County specifically delegated its legal responsibility to provide medical treatment to these individuals, sufficient to pass Constitutional muster under the United States Constitution, to Defendant Contractor.

27. Under this Agreement, Defendant Contractor agreed to render services commensurate with then current levels of care being provided by Defendant County and to act in accordance with the customs and practices of Defendant County.

28. Under this Agreement, Defendant Contractor is obligated to provide outside hospital care, where required, to inmates, detainees, and prisoners.

29. Under this Agreement, Defendant Contractor must evaluate all inmates, detainees, and prisoners prior to being booked into the Prison, and must make appropriate accommodations or changes for inmates with preexisting medical conditions.

30. Under this Agreement Defendant Contractor was responsible for staffing the Prison with sufficient medical personnel at levels commensurate with prior staffing, and the Prison was responsible for screening Defendant Contractor's employees who would be working in the Prison.

31. Under this Agreement, Defendant County paid the costs of care, administrative expenses, and compensation to Defendant Contractor.

32. Under this Agreement, Defendant Contractor agreed to comply with all civil rights laws in effect and agreed to comply with all right-to-know laws.

33. This Agreement was scheduled to end on December 14, 2012, but on September 12, 2012, Defendant County and Defendant Contractor entered into an Amendment ("the Amendment") to the Agreement which extended the Agreement through December 14, 2017.

34. The Amendment specifically reaffirmed Defendant County's right to ask Defendant Contractor to use alternate providers of goods and services. This was a guise indicative of Defendant County and Defendant Contractors' policy and custom of using cheaper, ineffective, and dangerous care rather than care adequate to treat detainees' serious medical needs.

### Specific Conduct Against Plaintiff

35. Plaintiff incorporates be reference paragraphs 1-34 of this Complaint as if set forth fully herein.

36. Plaintiff was incarcerated at the Prison from approximately October 15, 2014, through October 16, 2014.

37. At this time, Plaintiff wore a colostomy bag as a result of surgery undergone prior to his incarceration. This bag exposed Plaintiff's innards and/or broken skin when it had to be removed, cleaned, and/or replaced, dangerous activities which required clean environments, antiseptics, and specific tools.

38. Upon entry into the Prison, Plaintiff, along with the assistance of an unknown Corrections Officer, filled out an intake form, part of which included questions regarding his medical situation.

39. Plaintiff completed this form, and he specifically indicated that he had a colostomy bag and required specific care as a result.

40. Because Plaintiff had a colostomy bag, he was placed on the medical block of Prison, rather than in general population, evidencing the Prison and Defendant Contractor's knowledge of his serious medical needs.

41. Upon being placed on the medical block, Plaintiff was interviewed by an unknown nurse and unknown doctor, named herein as John Doe Medical Defendants both of whom he informed of his condition and need for special care.

42. When Plaintiff informed these individuals that he needed replacement equipment for his colostomy bag, his requests were ignored, the supplies were not ordered, and his wife was forced to bring such replacements into the Prison. Despite the fact that she brought these items into the Prison, Defendant was denied access to them by Defendants.

43. After being released from the Prison on October 16, 2014, Plaintiff was re-incarcerated on October 23, 2014.

44. Once again, Plaintiff filled out an intake form, informing officials of his colostomy bag and the special care he required.

45. Once again, Plaintiff was placed on the medical block and specifically informed the doctor and nurse, named John Doe Medical Defendants, there at the time of his intake of his colostomy bag and the special care it required.

46. Plaintiff remained on the medical block of the Prison, but his serious medical needs were not met.

47. Specifically, on a daily basis, Plaintiff informed the doctors, nurses, and corrections officers on the medical block that his colostomy bag needed to be changed and/or cleaned. These individuals included, but were not limited to Defendants Zaloga, Cornall, Tockett, Iannuzzi, Morskat, Ruth, and McCowley, John Doe Correctional Defendants and John Doe Medical Defendants.

48. Outside of the Prison, Plaintiff's colostomy bag was ordinarily changed at least every three days. These Defendants only permitted it to be changed every two weeks that he was incarcerated and refused to order supplies for him.

49. This refusal continued despite the fact that Plaintiff's wife provided the Prison with supplies for the colostomy bag, which the Prison refused to utilize.

50. More egregiously, Plaintiff's colostomy bag was required to be cleaned and washed three times per day.

51. The changing and cleaning of Plaintiff's colostomy bag required the following:

    a. A clean environment with access to running water.

    b. Hot water.

    c. Antibacterial substances to clean and disinfect the bag and its access to his body.

    d. Tools to properly change his bag.

52. Plaintiff was denied all of these things which he needed to safely and cleanly change his colostomy bag.

53. Specifically, Plaintiff was forced to and told by corrections officers, nurses, and doctors to change the colostomy bag by himself in the toilet in his cell, a horrifically unsafe and unsanitary place. These individuals included, but were not limited to Defendants Zaloga, Cornall, Tockett, Iannuzzi, Morskat, Ruth, and McCowley, John Doe Correctional Defendants and John Doe Medical Defendants.

54. These Defendants refused to allow Plaintiff to even utilize a sink to clean his colostomy bag.

55. Plaintiff was never given assistance in cleaning his colostomy bag while incarcerated in the Prison.

56. Each and every day, Plaintiff complained to these Defendants that he was not able to cleanly and appropriately change his colostomy bag, and each and every day he was ignored, forced to continue cleaning his colostomy bag in an unsanitary toilet.

57. As a result, Plaintiff acquired numerous internal and skin infections.

58. Each and every day thereafter, Plaintiff complained to these Defendants that he was ill and becoming more ill with the passage of time, and he was ignored.

59. In addition to Plaintiff's verbal complaints to these Defendants his need for medical care was readily apparent, as the skin infection caused severe skin rashes across his body and face, as he had a high fever from the internal infections, and as his side was actively bleeding from his side. These Defendants continued to refuse treatment.

60. On a daily basis, Plaintiff asked these Defendants for medical treatment, and/or transportation to the hospital for treatment, and he was ignored.

61. On or about November 20, 2014, Plaintiff was released from the Prison, he immediately reported to a doctor.

62. Plaintiff was diagnosed with multiple severe infections and was required to undergo invasive and painful surgery that would have otherwise been unnecessary but for his lack of care at the Prison.

63. Plaintiff has since suffered and will continue to suffer into the future, pain, torment, and emotional and psychological trauma from these events.

64. During his entire time in the Prison, despite being classified to the medical block, Plaintiff's serious medical needs were willfully and deliberately ignored by Defendants, causing the damages complained of herein.

65. During this period of time, Defendants Zaloga, Cornall, Tockett, Iannuzzi, Morskat, Ruth, and McCowley, John Doe Correctional Defendants and John Doe Medical Defendants, deviated from the standard or care in failing to clean and replace Plaintiff's colostomy bag on a regular basis, failing to diagnose and treat his infection when he presented with symptoms, failing to refer Plaintiff to the necessary hospital/specialist when necessary, and failing to properly treat and care for Plaintiff's condition and colostomy bag, causing all injuries described herein.

**Policy Conduct**

66. Plaintiff incorporates paragraphs 1-65 of this Complaint as if fully set forth herein.

67. There is a custom, policy and/or practice at the Prison belonging to and between Defendant Contractor and Defendant County of not providing adequate medical care for the serious medical needs of inmates, detainees, and prisoners.

68. There is a custom, policy and/or practice at the Prison belonging to and between Defendant Contractor and Defendant County of providing less than adequate treatment in favor of less-expensive treatment to, detainees, and prisoners, which is detrimental to the health of these individuals and indifferent to their serious medical needs.

69. There is a custom, policy and/or practice at the Prison belonging to and between Defendant Contractor and Defendant County of not providing adequate prescription drugs and medical devices to inmates, detainees, and prisoners, and instead providing inadequate devices and prescriptions due to cost efficiencies which is detrimental to the health of these individuals and indifferent to their serious medical needs.

70. There is a custom, policy and/or practice at the Prison belonging to and between Defendant Contractor and Defendant County of ignoring inmates', detainees', and prisoners' legitimate and necessary requests for serious medical attention.

10

71. Both Defendant Contractor and Defendant County regularly fail to train and fail to supervise their employees in responding to the serious medical needs and requests of detainees at the Prison, despite the fact that they have been placed on notice countless times over the past decade of instances in which detainees' serious requests for medical attention are ignored.

72. Both Defendant Contractor and Defendant County have a policy of providing the absolute minimum of health care to inmates at the Prison for the sole purpose of maximizing profits of Defendant Contractor.

73. Defendant Contractor and Defendant County have a policy of not making referrals to specialists outside of the Prison, even when such referrals are medically necessary due to serious medical needs.

74. Defendants Contractor and County had a policy of not evaluating medical complaints by inmates promptly or adequately.

75. Defendants Contractor and County had a policy of permitting nurses and other untrained workers, who were not doctors, to treat and diagnose patients unsupervised when that role should have been fulfilled by a trained Doctor.

76. A culture of silence exists and has existed at the Prison in which both inmates and corrections officers were expected to not report misconduct of corrections officers or other staff of Defendant Contractor and Defendant County.

77. This custom was known and ignored by those in authority, resulting in Plaintiff's mistreatment and lack of medical care.

78. If inmates reported misconduct by corrections officers, they would lose their privileges, lose their jobs at the Prison, be subject to physical beatings, and be placed in the hole. Plaintiff was therefore prevented from making more extensive Complaints than the verbal complaints that he raised daily to staff of Defendant Contractor and Defendant County.

79. If corrections officers reported other corrections officers, they would also face retaliation, preventing these officers from aiding Plaintiff.

80. Corrections officers at the Prison were never trained or supervised in regards to providing adequate medical care to inmates and reporting concerns regarding inmate health, even after the need for training was obvious to defendants in authority positions.

81. The Prison Policy Makers, including the individually named Defendants in this suit, over the course of the time relevant to this case, held regular meeting to discuss prison matters and to set policy.

82. These meetings were held off the record.

83. After discussing the issues raised in this Complaint, nothing was done to remedy the problems. No policy was set or amended, despite knowledge of the need, to prevent sexual abuse and harassment of inmates.

84. There was a policy at the Prison of failing to discipline officers for conduct and/or reporting bad conduct by other officers, which directly resulted in Plaintiff's injuries.

85. Lackawanna County failed to train the Prison guards in responding to and reporting on the medical needs of patients, despite the fact that they knew of the need for this policy.

86. As a result of officers with knowledge failing to report, per this prison culture, Plaintiff was continuously subjected to lack of medical care and treatment while in the Prison.

87. Defendant Zaloga is the owner, operator, and President of Defendant Contractor, and the two treat each other as the same entity; therefore, Defendant Zaloga's actions and inactions constitute policy and custom of Defendant Contractor.

## Claims for Relief

### Count I

**Municipal Liability, Failure to Supervise, Failure to Train and Civil Rights Violations Caused By Policy as to Defendant County, Defendant O'Malley, Defendant Wansacz, Defendant O'Brien, Defendant McMillan, Defendant Langan, Defendant Contractor, and Defendant Zaloga**

**United States Constitution, Amendment XIV; 42 U.S.C. §§ 1983**

88. Plaintiff incorporates by reference Paragraphs 1-87 of this Complaint as is fully set forth herein.

89. Defendants County, O'Malley, Wansacz, O'Brien, McMillan, Langan, Contractor and Zaloga ("Defendant Policy Makers") developed, implemented, approved, and/or maintained a number of deficient customs, policies, and practiced with deliberate indifference, which proximately caused a deprivation of Plaintiff's Constitutional Rights.

90. Defendant Policy Makers' unconstitutional customs, policies and practices encouraged their employees, officers, and agents to believe that they could violate the Constitutional Rights of inmates and Plaintiff within impunity, without consequence, and with explicit or tacit approval.

91. Through implementation of custom, policy, practice, ordinance, regulation and/or statements, Defendant Policy Makers, with deliberate indifference and callous disregard, caused harm to Plaintiff and similarly situated inmates.

92. The separate and/or conspired acts and/or omission of Defendant Policy Makers, and failure to supervise and failure to train, made willfully, callously, recklessly, with gross negligence, and/or with deliberate indifference, and made under the Color of State Law, proximately caused and/or facilitated the violations of Plaintiff's rights under the United States Constitution, Amendment XIV; 42 U.S.C. §§ 1983. Specifically, Plaintiff's Right to Due Process was violated.

93. As a direct and proximate cause of the aforementioned acts and omissions of Defendant Policy Makers, Plaintiff suffered the injuries and damages set forth herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count II

### Individual Violations as to Defendants Zaloga, Cornall, Tockett, Iannuzzi, Morskat, Ruth, McCowley, John Doe Medical Defendants, and John Doe Correctional Defendants

### United States Constitution, Amendments XIV; 42 U.S.C. §§ 1983

94. Plaintiff incorporates by reference Paragraphs 1-93 of this Complaint as if fully set forth herein.

95. Defendant Zaloga's, Cornall's, Tockett's, Iannuzzi's, Morskat's, Ruth's, and McCowley's, John Doe Correctional Defendants' and John Doe Medical Defendants', aforementioned actions and lack of actions, taken under Color of State Law constitutes a violation of the United States Constitution, Amendment XIV; 42 U.S.C. §§ 1983. Specifically, Plaintiff's Right to Due Process was violated.

96. As a direct and proximate cause of the aforementioned acts and omissions, Plaintiff suffered the injuries and damages herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count III

**Conspiracy, Failure to Intervene, Failure to Supervise, and Failure to Report as to Defendants Zaloga, Cornall, Tockett, Iannuzzi, Morskat, Ruth, McCowley, John Doe Medical Defendants, and John Doe Correctional Defendants**

**United States Constitution, Amendment XIV; 42 U.S.C. §§ 1983**

97. Plaintiff incorporates by reference Paragraphs 1-96 of this Complaint as if fully set forth herein.

98. Defendant Zaloga's, Cornall's, Tockett's, Iannuzzi's, Morskat's, Ruth's, and McCowley's, John Doe Correctional Defendants' and John Doe Medical Defendants', ("Defendant Individuals"), directly, indirectly, intentionally, knowingly, and/or recklessly, conspired, aided, abetted, furthered, facilitated, and/or agreed to violate Plaintiff's Constitutional Rights by individual acts and/or omissions, despite a duty to intervene and/or supervise, and despite knowledge of the violation of Plaintiff's Constitutional Rights.

99. Defendant Individuals, acting individually and/or in concert and acting under the Color of State Law, failed in their duty to supervise and intervene to prevent the violation of inmates rights and ignored with deliberate indifference the conduct described herein, thereby, violating Plaintiff's rights under the United States Constitution, Amendment XIV; 42 U.S.C. §§ 1983. Specifically, Plaintiff's Right to Due Process was violated.

100. As a direct and proximate cause of the aforementioned acts and omissions, Plaintiff suffered the injuries and damages herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count IV

**Supplemental State Law Claim for Intentional Infliction of Emotional Distress, against Defendants Zaloga, Cornall, Tockett, Iannuzzi, Morskat, Ruth, McCowley, John Doe Medical Defendants, and John Doe Correctional Defendants**

101. Plaintiff incorporates by reference Paragraphs 1-100 of this Complaint as if fully set forth herein.

102. The aforementioned acts and conduct of Defendant Zaloga's, Cornall's, Tockett's, Iannuzzi's, Morskat's, Ruth's, and McCowley's, John Doe Correctional Defendants' and John Doe Medical Defendants' constitute extreme and outrageous conduct that is

14

beyond the bounds of conduct tolerated by a civilized society such that they violate basic concepts of human decency and shock the conscience of society, which caused severe emotional distress that has manifested in both mental and physical injuries that may be permanent.

103. As a direct and proximate cause of the foregoing, Plaintiff suffered the injuries described herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

### Count V

### Supplemental State Law Claim for Civil Conspiracy Against All Defendants

104. Plaintiff incorporates by reference Paragraphs 1-103 of this Complaint as if fully set forth herein.

105. All individual Defendants knowingly, maliciously, recklessly, and with gross negligence conspired to engage in the aforementioned Tort Claims and stated facts, whereby each Defendant acted in concert by agreement to cause the foreseeable harm and/or facilitate the harm through individual and/or separate acts and/or omissions.

106. As a direct and proximate cause of this conspiracy, Plaintiff suffered the injuries described herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

### Count VI

### Supplemental State Law Claim for Medical Negligence, Negligence, and Gross Negligence against Defendants Zaloga, Contractor, McCowley and John Doe Medical Defendants

107. Plaintiff incorporates by reference Paragraphs 1-106 of this Complaint as if fully set forth herein.

108. Defendants Zaloga, McCowley, and John Doe Medical Defendants owed Plaintiff a duty of care.

109. These Defendants breached that duty of care.

110. Defendant contractor is vicariously liable for the actions, inactions, and breach of duty by these Defendants.

111. These Defendants are responsible for their own breach of duty, negligence, and gross negligence.

112. Defendant Zaloga was negligent and grossly negligent in his supervision and training of Defendant McCowley and is therefore responsible for all breaches committed by parties and non-parties under his supervision.

113. As a result of the aforementioned breaches, Plaintiff suffered substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count VII

### Supplemental State Law Claim for Corporate Negligence against Defendant Contractor

114. Plaintiff incorporates by reference Paragraphs 1-113 of this Complaint as if fully set forth herein.

115. Defendant Contractor is a comprehensive health care center with responsibility for arranging and coordinating the total health care of all inmates, prisoners, and detainees in the Prison.

116. Defendant Contractor has a duty to select and retain only competent physicians and caregivers.

117. Defendant Contractor has a duty to oversee all persons who practice medicine within its walls as to patient care.

118. Defendant Contractor has a duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for its patients.

119. Defendant Contractor selected and retained Defendants Zaloga, McCowley, Iannuzzi, Morskat, Ruth, Tockett, and John Doe Medical Staff, who were incompetent in the performance of their duties.

120. Defendant Contractor is liable for its own grossly negligence and deliberately indifferent policies.

121. Defendant Contractor's negligence and gross negligence and deliberate indifference extended to placing Zaloga in a position to supervise the other individual medical Defendants and failing to properly oversee them.

122. As a result of Defendant Contractor's aforementioned breaches of duties to Plaintiff, Plaintiff suffered substantial damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Damages

123. Plaintiff incorporates by reference Paragraphs 1-122 of this Complaint as if fully set forth herein.

124. As the proximate result of the acts committed by the Defendants under the Color of State Law in violation of the United States Constitution and violations of Pennsylvania State Law, the Plaintiff suffered damages, not limited to, substantial pain, medical complications, surgeries, mental anguish, post traumatic stress disorder, an inordinate fear of authority figures, isolated spaces, shame, humiliation, as well as physical and psychological injury. The Plaintiff also suffered loss of future life experience, enjoyment, economic loss, and deprivation of the Plaintiff's Civil Rights.

125. On all claims for relief under 42 U.S.C. §§ 1983, the Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of $150,000.00 and punitive damages in an amount in excess of $150,000.00, plus interest, costs, attorney fees, declaratory relief, and any such other relief as this Honorable Court may deem just.

126. On all claims for relief under Pennsylvania Law, the Plaintiff demands judgment against the Defendants for compensatory damages in an amount in excess of $150,000.00 and punitive damages in an amount in excess of $150,000.00, plus interest, costs, attorney fees, and any such other relief as this Honorable Court may deem just.

## Jury Demand

127. Plaintiff incorporates by reference Paragraphs 1-126 of this Complaint as if fully set forth herein.

128. On all counts, facts, and claims asserted herein, Plaintiff demands a trial by jury.

Respectfully Submitted:

*Walker Comerford Law*

Matthew T. Comerford, Esq.
Walker Comerford Law
Attorney for Plaintiff
205-207 N. Washington Avenue
Scranton, PA 18503
Phone: 570-344-2355
Fax: 570-344-1061

```
Court Name: District Court
Division: 3
Receipt Number: 33302490
Cashier ID: gangeli
Transaction Date: 10/24/2016
Payer Name: WALKER AND COMERFORD LAW LLC

CIVIL FILING FEE
 For: WALKER AND COMERFORD LAW LLC
 Case/Party: D-PAM-3-16-CV-002143-001
 Amount:         $400.00

Paper Check Conversion
 Check/Money Order Num: 2768
 Amt Tendered: $400.00

Total Due:      $400.00
Total Tendered: $400.00
Change Amt:     $0.00


Only when bank clears the check or
verifies credit of funds is the fee
or debit officially paid or
discharged. A $53.00 fee will be
charged for returned checks.
```